UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-cv-23212

GALINDA HUDSON,

     Plaintiff,

v.

CARNIVAL CORPORATION,
a Panamanian Corporation d/b/a
CARNIVAL CRUISE LINE, and
ONE SPA WORLD LLC,

     Defendants.

_____/

**COMPLAINT FOR DAMAGES
AND DEMAND FOR TRIAL BY JURY**

Plaintiff, GALINDA HUDSON ("Plaintiff"), through undersigned counsel, sues Defendant,

CARNIVAL CORPORATION, a Panamanian Corporation, d/b/a CARNIVAL CRUISE LINE

("Carnival"), ONE SPA WORLD LLC ("Spa World"), and demands trial by jury, stating as follows:

**PARTIES AND JURISDICTION**

1.    Plaintiff seeks damages in excess of $75,000.00, exclusive of interest, costs and

attorney's fees.

2.    This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C.§ 1333.

3.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in

controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between

citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

4.    Suit is filed in federal court because of the federal forum selection clause in the

passenger contract ticket issued by Defendant.

5.    Plaintiff is *sui juris* and is a resident and citizen of the state of Louisiana.

6.     Defendant is a foreign corporation who is authorized to conduct and who does conduct business in the State of Florida, who at all times material hereto was and is doing business in Miami-Dade County, Florida, and who maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

7.     Defendant is a dual citizen of the State of Florida and the nation of Panama.

8.     Defendant, at all times material hereto, personally or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

    a.     Operated, conducted, engaged in or carried on a business venture; and/or

    b.     Had an office or agency; and/or

    c.     Engaged in substantial activity; and/or

    d.     Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

9.     All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## DEFINITIONS AND FACTUAL ALLEGATIONS

10.     Hereinafter, the phrase, the "subject area," shall include, but not be limited to, the spa, and all material and effects pertaining thereto, including, but not limited to, the massage table, the massage oils, and/or the component parts thereof.

11.     At all times material hereto, Defendants owned, operated, maintained, managed, and/or controlled the subject area and the vicinity involved in Plaintiff's incident.

12.     At all times material hereto, Defendant Carnival owned, operated, maintained, managed, and/or controlled the cruise ship, the Carnival *Vista*.

13. On or about July 18, 2021, Plaintiff was a fare paying passenger on Defendant Carnival's vessel, the Carnival *Vista*.

14. Plaintiff was waiting to receive a massage in the subject area together with her husband, but the masseuse, who was an agent or employee of Defendant Carnival and/or Defendant Spa World, was late. Approximately 20 minutes or later, the masseuse arrived. Defendants knew that Plaintiff required the use of a wheelchair, since their employees and/or agents, including the masseuse and her assistant masseuse, observed Plaintiff's husband helping Plaintiff get out of her wheelchair and onto the massage table.

15. When the massage was finished, the masseuse offered to assist Plaintiff to get off the massage table and into her wheelchair. However, Plaintiff refused this offer, and said that she needed her husband's help instead, and to wait for him to finish getting dressed so he could help her. However, the masseuse grabbed Plaintiff's legs off the table against her well. Plaintiff told the masseuse to stop, and that she would not be able to help her. Moreover, Defendants did not clean Ms. Hudson properly, and did not wipe her off with towels so she was greasy from the massage oil, with the result that she was more slippery and harder to handle. However, while the masseuse was trying to move Plaintiff off the massage table and into her wheelchair, the masseuse dropped Plaintiff onto the floor, causing Plaintiff to suffer severe injuries that include, but are not limited to, an L1 fracture, which require surgery(ies) and/or future surgery(ies).

16. Defendants did not call for or send anyone from the ship's medical center to help Plaintiff after she fell. After Plaintiff informed the guest services desk about her incident, however, she was advised to go to the ship's medical center. However, the ship's doctor failed to take imaging of Plaintiff and failed to diagnose Plaintiff's fracture.

17. The dangerous conditions included, but are not limited to, the following:

a.   Defendants' employees and/or agents' poor handling and poor cleaning of their massage patrons, including Plaintiff, and/or;

b.   The unreasonable height of the massage table, and/or;

c.   The unreasonable slipperiness of the massage oil used on Plaintiff, and/or;

d.   Other dangerous conditions that will be revealed through discovery.

18.   Defendants either knew or should have known of these risk creating and/or dangerous conditions, due to reasons that include, but are not limited to, the following:

a.   The masseuses were rushing Plaintiff, apparently because they knew they were late and therefore were recklessly speeding the massage up to get to the next patron.

b.   The massage table was unreasonably high off the ground such that Defendants knew or should have known that passengers who fell from that height would be at an unreasonable risk of serious injuries.

c.   The massage oil used on Plaintiff was unreasonably slippery such that Plaintiff's body was unreasonably difficult to handle to assist her in getting off the massage table and into her wheelchair.

d.   Previous massage patrons suffered prior incidents in which they suffered incidents and/or were injured while getting off the massage table, including prior incidents in which massage patrons were mishandled and/or injured by Defendants' employees and/or agents while they moved these patrons off the massage tables, and/or prior incidents in which previous massage patrons suffered incidents and/or were injured due to failing to be properly cleaned, due to the unreasonable height of the massage table, and/or due to the unreasonable slipperiness of the massage oil used on them.

e.   Upon information and belief, Defendants participated in the installation and/or design

of the subject area, or alternatively, Defendants accepted the ship and/or area with the subject massage table and massage oil, and their design defects present after having been given an opportunity to inspect them and the materials in them, such that Defendants should have known of the design defects of the subject area before providing it for use by the public. These design defects include, but are not limited to, their unreasonable height and unreasonably slippery oil.

f.  Upon information and belief, there are relevant safety standards/recommendations/other guidelines regarding the safety of the subject area, including, but not limited to, the proper handling of massage patrons, the proper cleaning of massage patrons, the proper height for massage tables, and/or proper slipperiness of the massage oils used, and their proper functionality, and Defendants should have known of these standards because whether such standards are legally required for Defendants to comply with or not, a fact-finder is entitled to determine, if it so choses, that these standards/recommendations/other guidelines show what reasonable Defendants should have done.

g.  Defendants also knew or should have known of these dangerous conditions through inspecting the subject area and the vicinity involved in Plaintiff's incident, and if they did not know of these dangerous conditions, this was because they failed to adequately inspect the subject area and the vicinity involved in Plaintiff's incident.

h.  Moreover, Defendants knew or should have known of these dangerous conditions for other reasons that will be revealed through discovery.

19.  At all times relevant, the subject area was unreasonably dangerous, risk-creating, defective, outdated, improperly designed, improperly installed, and/or otherwise unsafe.

20.    The subject area and the vicinity lacked adequate safety features to prevent Plaintiff's fall.

21.    These hazardous conditions were known, or should have been known, to Defendants in the exercise of reasonable care.

22.    These hazardous conditions existed for a period of time before the incident.

23.    These conditions were neither open nor obvious to Plaintiff.

24.    At all times relevant, Defendants failed to adequately inspect the subject area and the vicinity for dangers, and Defendants failed to adequately warn Plaintiff of the dangers.

25.    At all times relevant, Defendants failed to eliminate the hazards.

26.    At all times relevant, Defendants failed to maintain the subject area and the vicinity in a reasonably safe condition.

27.    At all times relevant, Defendants participated in the design and/or approved the design of the subject area and the vicinity involved in Plaintiff's incident.

28.    At all times relevant, Defendants participated in the installation and/or approved the installation of the subject area and the vicinity involved in Plaintiff's incident.

29.    The crewmembers of the Carnival *Vista* were in regular full-time employment of Defendant Carnival and/or the ship, as salaried crewmembers, subject to the ship's discipline and master's orders.

30.    Defendants had the right to hire and fire their employees and/or agents.

31.    Defendants are directly responsible and liable for their actions and the actions of their employees and/or agents.

32.   The crewmembers were employees and/or actual agents and/or apparent agents of Defendant Carnival, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

33.   The staff in the subject area were employees and/or actual agents and/or apparent agents of Defendant Carnival and/or Defendant Spa World, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

34.   These staff members were represented to Plaintiff and the ship's passengers as employees of Defendant Carnival through signs, documents, and/or uniforms. The staff were also paid a salary and/or an hourly wage by Defendant Carnival and/or Defendant Carnival knew that the staff represented themselves to be employees of Defendant Carnival and allowed them to represent themselves as such. Plaintiff detrimentally relied on these representations as she would not have proceeded on the subject cruise had she believed the staff members were not employees of Defendant Carnival.

**COUNT I**
**NEGLIGENT FAILURE TO WARN AS TO CARNIVAL**

35.   Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 10 through 23 as if set forth herein.

36.   At all times relevant, Defendant Carnival owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including Plaintiff.

37.   Such duty includes, but is not limited to, the duty that Defendant Carnival owes to warn passengers of any dangers that it knew or should have known that were not open and obvious to Plaintiff.

38.   Such duty also includes, but is not limited to, the duty to warn passengers of hazards which passengers may reasonably be expected to encounter.

39. At all times material, Defendant Carnival, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with Defendant Carnival, breached the duty of reasonable care owed to Plaintiff and was negligent by failing to warn Plaintiff of the dangerous conditions discussed in the "Definitions and Factual Allegations" section of the instant complaint.

40. Furthermore, Defendant Carnival knew or should have known of these dangerous conditions for the reasons discussed in the "Definitions and Factual Allegations" section of the instant complaint.

41. These dangerous conditions were also created by Defendant Carnival.

42. Defendant Carnival either failed to adequately inspect the subject staff, area, and the vicinity to ensure that there were no dangerous conditions that passengers needed to be warned of, or Defendant Carnival failed to warn Plaintiff despite knowing of the dangers.

43. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear and tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

44. These dangerous conditions existed for a period of time before the incident.

45. These conditions were neither open nor obvious to Plaintiff.

46. Defendant Carnival's breach was the cause in-fact of Plaintiff's great bodily harm in that, but for Defendant's breach, Plaintiff's injuries would not have occurred.

47. Defendant Carnival's breach proximately caused Plaintiff great bodily harm in that the incident that occurred was a foreseeable result of Defendant Carnival's breach.

48. As a result of Defendant Carnival's negligence, Plaintiff has suffered severe bodily

injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and loss of future earning capacity, and loss of the value of Plaintiff's vacation, cruise, and transportation costs.

49.    The losses are either permanent or continuing in nature.

50.    Plaintiff has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, GALINDA HUDSON, demands Judgment against Defendant, CARNIVAL, for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, loss of ability to earn money, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

## COUNT II
## NEGLIGENT FAILURE TO WARN AS TO SPA WORLD

51.    Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 10 through 23 as if set forth herein.

52.    At all times relevant, Defendant Spa World owed a duty to exercise reasonable care under the circumstances for the safety of its patrons, including Plaintiff.

53.    Such duty includes, but is not limited to, the duty that Defendant Spa World owes to warn patrons of any dangers that it knew or should have known that were not open and obvious to Plaintiff.

54.     Such duty also includes, but is not limited to, the duty to warn patrons of hazards which patrons may reasonably be expected to encounter.

55.     At all times material, Defendant Spa World, through its agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with Defendant Spa World, breached the duty of reasonable care owed to Plaintiff and was negligent by failing to warn Plaintiff of the dangerous conditions discussed in the "Definitions and Factual Allegations" section of the instant complaint.

56.     Furthermore, Defendant Spa World knew or should have known of these dangerous conditions for the reasons discussed in the "Definitions and Factual Allegations" section of the instant complaint.

57.     These dangerous conditions were also created by Defendant Spa World.

58.     Defendant Spa World either failed to adequately inspect the subject staff, area, and the vicinity to ensure that there were no dangerous conditions that patrons needed to be warned of, or Defendant Spa World failed to warn Plaintiff despite knowing of the dangers.

59.     Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear and tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

60.     These dangerous conditions existed for a period of time before the incident.

61.     These conditions were neither open nor obvious to Plaintiff.

62.     Defendant Spa World's breach was the cause in-fact of Plaintiff's great bodily harm in that, but for Defendant's breach, Plaintiff's injuries would not have occurred.

63.     Defendant Spa World's breach proximately caused Plaintiff great bodily harm in that

the incident that occurred was a foreseeable result of Defendant Spa World's breach.

64.    As a result of Defendant Spa World's negligence, Plaintiff has suffered severe bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and loss of future earning capacity, and loss of the value of Plaintiff's vacation, cruise, and transportation costs.

65.    The losses are either permanent or continuing in nature.

66.    Plaintiff has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, GALINDA HUDSON, demands Judgment against Defendant, SPA WORLD, for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, loss of ability to earn money, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

### COUNT III
### NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE SUBJECT AREA AND THE VICINITY AS TO CARNIVAL

67.    Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 10 through 26, as if set forth herein.

68.    At all times material hereto, Defendant Carnival owed a duty to its passengers, and in particular to Plaintiff, not to permit dangerous conditions to be in places where they could harm

passengers, such as those discussed in the "Definitions and Factual Allegations" section of the instant complaint, as well as to design and install reasonable safeguards.

69.     At all times material hereto, Defendant Carnival participated in the design process of the subject vessel by generating design specifications for the shipbuilder to follow, and put the vessel on which Plaintiff was injured into the channels of trade, and/or Defendant Carnival approved of the subject vessel's design, including the design of the subject area and the vicinity.

70.     At all times material hereto, Defendant Carnival manufactured, designed, installed, and/or approved of the Carnival *Vista*, including providing specifications to the shipbuilder in the original build process, and/or during its refurbishments, and as such owed a duty to its passengers, and in particular to Plaintiff, to design, install and/or approve of the subject area and the vicinity without any defects.

71.     At all times material hereto, Defendant Carnival through its agents and/or employees who were acting in the course and scope of their employment and/or agency with Defendant Carnival, designed, installed, and/or approved of the subject area and the vicinity involved in Plaintiff's incident, which was also in violation of the applicable industry standards/recommendations/and/or other guidelines.

72.     Defendant Carnival provides design elements of the vessels to the ship builder and/or approves of design elements which include the subject area and the vicinity.

73.     Defendant Carnival maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings of the vessels, including the Carnival *Vista*, during the new build process.

74.     Defendant Carnival has the right to enter the ship and inspect it during construction to ensure that it is being constructed in accordance with the design specifications and has a right

to insist on changes when safety concerns are identified.

75.    Defendant Carnival has the right to inspect and reject design elements before taking possession of the ship.

76.    At all times material hereto, Defendant Carnival knew or had reason to know the subject area and the vicinity involved in Plaintiff's incident were unreasonably dangerous for the reasons discussed in the "Definitions and Factual Allegations" section of the instant complaint.

77.    Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear and tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

78.    However, Defendant Carnival permitted the dangerous conditions to be present in the subject area and the vicinity without correcting these design deficiencies, and did not design and install reasonable safeguards.

79.    The design flaws that made the subject area and the vicinity involved in Plaintiff's incident unreasonably dangerous were the direct and proximate cause of Plaintiff's injuries.

80.    Defendant Carnival is liable for the design flaws of the vessel, including of the subject area and the vicinity involved in Plaintiff's incident, which it knew or should have known of.

81.    Defendant Carnival failed to correct and/or remedy the defective conditions despite the fact that it knew or should have known their danger.

82.    As a result of Defendant Carnival's negligence, Plaintiff has suffered severe bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and loss of future earning capacity, and loss of the value of Plaintiff's vacation, cruise, and

transportation costs.

83. The losses are either permanent or continuing in nature.

84. Plaintiff has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, GALINDA HUDSON, demands Judgment against Defendant, CARNIVAL, for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, loss of ability to earn money, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

<div align="center">

**COUNT IV**
**NEGLIGENCE AS TO CARNIVAL FOR THE ACTS OF THE MASSEUSES BASED ON VICARIOUS LIABILITY THROUGH APPARENT AGENCY**

</div>

85. Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 10 through 23, and paragraphs 27 through 31, as if set forth herein.

86. At all times material hereto, the masseuses in the subject area and spa, including the subject masseuses, were represented to the Plaintiff and the ship's passengers as employees and/or agents and/or servants of Defendant, in that:

     a. They wore a ship's uniform.

     b. They ate with the ship's crew.

     c. They were under the commands of the ship's officers.

     d. They worked in a department of Carnival's on the subject ship.

e.   They were paid a salary by Carnival.

f.   They worked aboard the vessel.

g.   They spoke to the Plaintiff as though they had authority to do so by Carnival.

h.   Carnival allowed its name to be utilized in connection with the advertising of the subject spa.

i.   Carnival made all arrangements for the subject spa without effectively disclosing to Plaintiff that the subject spa was being run by another entity (and/or entities) that it contends are not its agent(s).

j.   Carnival marketed the subject spa using its company logo on its website, its app and/or in its brochures and/or on its ship without effectively disclosing to Plaintiff that the subject spa was being run by another entity (and/or entities) that it contends are not its agent(s).

k.   Carnival maintained a website and a guest services desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject spa without effectively disclosing to Plaintiff that the subject spa was being run by another entity (and/or entities) that it contends are not its agent(s).

l.   Until the point that Plaintiff actually participated in the subject spa, Plaintiff's exclusive contacts concerning the subject spa was with Carnival, and Plaintiff booked the time in the subject spa on Carnival's website and/or app.

m.   Plaintiff received the receipt for the purchase of the subject spa

exclusively from Carnival.

n.   In addition, Defendant Carnival further represented to Plaintiff that the masseuses in the subject area were agents and/or employees of Defendant through its marketing materials and through other official statements that described the subject area and spa in proprietary language, including language such as "CARNIVAL CORPORATION's/the CARNIVAL *Vista*'s/our spa," and through encouraging Plaintiff to make use of "its" infirmary/medical center if Plaintiff was in need of medical attention.

87.   Furthermore, at no time did Defendant represent to the Plaintiff in particular, or the ship's passengers in general, in a meaningful way that the spa's staff were not agents or employees of Defendant Carnival.

88.   At all material times, Plaintiff reasonably relied on the representations to Plaintiff's detriment that the spa's staff were employees, and/or agents, and/or servants of Defendant Carnival.

89.   It was reasonable to believe that the spa's staff were Defendant Carnival's agents because they wore a ship's uniform. In addition, at all times material, the spa's staff spoke and acted as though they were authorized to do so by Defendant.

90.   This reasonable reliance was detrimental because Plaintiff would not have gone to the subject spa had Plaintiff known that the spa staff on the ship were not Defendant Carnival's agents.

91.   Defendant Carnival is estopped to deny that the spa's staff were its apparent agents, and/or apparent employees, and/or apparent servants.

92.     Defendant Carnival had a duty to provide Plaintiff with reasonable care under the circumstances, and through the acts of its apparent agents, breached its duty to provide Plaintiff with reasonable care under the circumstances.

93.     Defendant Carnival owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

94.     Defendant Carnival is vicariously liable for the acts of the subject masseuses, as discussed in the "Definitions and Factual Allegations" section of the instant complaint.

95.     This negligence proximately caused Plaintiff great bodily harm in that, but for this negligence, Plaintiff's injuries would not have occurred.

96.     As a result of Defendant Carnival's negligence, Plaintiff has suffered severe bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and loss of future earning capacity, and loss of the value of Plaintiff's vacation, cruise, and transportation costs.

97.     The losses are either permanent or continuing in nature.

98.     Plaintiff has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, GALINDA HUDSON, demands Judgment against Defendant, CARNIVAL, for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, loss of ability to earn money, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity

for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

**COUNT V**
**NEGLIGENCE AS TO SPA WORLD FOR THE ACTS OF ITS STAFF, EMPLOYEES, AND/OR AGENTS, BASED ON VICARIOUS LIABILITY**

99.    Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 10 through 23, and paragraphs 27 through 31, as if set forth herein.

100. Defendant Spa World owed a duty to exercise reasonable care under the circumstances for the safety of its patrons.

101. The people who were working in the subject area and spa at the time of Plaintiff's incident, including the subject masseuses, were agents of Defendant Spa World, for the following reasons:

102. They were the staff and/or employees of Defendant Spa World, or were Defendant Spa World's agents, apparent agents, and/or servants.

103. These staff, employees, and/or agents were subject to the right of control by Defendant Spa World.

104. These staff, employees, and/or agents were acting within the scope of their employment or agency.

105. Defendant Spa World acknowledged that these staff, employees, and/or agents would act on Defendant Spa World's behalf, and they accepted the undertaking.

106. Defendant Spa World is vicariously liable for the acts of its staff, employees, and/or agents, including the subject masseuses, as discussed in the "Definitions and Factual Allegations" section of the instant complaint.

107. This negligence proximately caused Plaintiff great bodily harm in that, but for this

negligence, Plaintiff's injuries would not have occurred.

108.  As a result of Defendant Spa World's negligence, Plaintiff has suffered severe bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and loss of future earning capacity, and loss of the value of Plaintiff's vacation, cruise, and transportation costs.

109.  The losses are either permanent or continuing in nature.

110.  Plaintiff has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, GALINDA HUDSON, demands Judgment against Defendant, SPA WORLD, for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, loss of ability to earn money, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

**COUNT VI**
**<u>NEGLIGENT FAILURE TO INSPECT, CLEAN, MAINTAIN, REPAIR, REMEDY,</u>**
**<u>AND/OR TAKE OTHER REASONABLE MEASURES FOR THE SAFETY OF</u>**
**<u>PLAINTIFF AS TO CARNIVAL</u>**

111.  Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 10 through 24 as if set forth herein.

112.  Defendant Carnival owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

113. This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately inspecting, cleaning, maintaining, repairing, and/or remedying the subject area and the vicinity, and/or making other efforts to make sure the subject area and the vicinity were safe for the use and enjoyment of its passengers.

114. At all times material, Defendant Carnival, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with Defendant Carnival, breached the duty of reasonable care owed to Plaintiff and were negligent by failing to adequately inspect, clean, maintain, repair, and/or remedy the subject area and the vicinity, and/or to make other efforts to make sure the subject area and the vicinity were safe, such that the risk creating and/or dangerous conditions discussed in the "Definitions and Factual Allegations" section of the instant complaint were present at the time of Plaintiff's incident.

115. These risk creating and/or dangerous conditions were caused by design defects and/or by Defendant Carnival's failure to adequately inspect, clean, maintain, repair, and/or remedy the subject area and the vicinity, and/or to make other efforts to make sure the subject area and the vicinity were safe.

116. Defendant Carnival's failure to adequately clean, maintain, repair, and/or remedy the subject area and the vicinity, and/or to make other efforts to make sure the subject area and the vicinity were safe, was either due to its failure to adequately inspect the subject area and the vicinity prior to Plaintiff's incident to ensure they were in a reasonably safe condition, or due to its failure to adequately clean, maintain, repair, and/or remedy the subject area and the vicinity, and/or to make other efforts to make sure the subject area and the vicinity were safe, despite its knowledge of the dangerous conditions, which posed a risk to its passengers.

117. In addition, Defendant Carnival either knew or should have known of these risk-creating and/or dangerous conditions for the reasons discussed in the "Definitions and Factual Allegations" section of the instant complaint.

118. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear and tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

119. Defendant Carnival's negligence proximately caused Plaintiff great bodily harm in that, but for Defendant Carnival's negligence, Plaintiff's injuries would not have occurred.

120. As a result of Defendant Carnival's negligence, Plaintiff has suffered severe bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and loss of future earning capacity, loss of the value of Plaintiff's vacation, cruise, and transportation costs.

121. The losses are either permanent or continuing in nature.

122. Plaintiff has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, GALINDA HUDSON, demands Judgment against Defendant, CARNIVAL, for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, and lost earning capacity, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity

for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

**COUNT VII**
**NEGLIGENT FAILURE TO INSPECT, CLEAN, MAINTAIN, REPAIR, REMEDY,
AND/OR TAKE OTHER REASONABLE MEASURES FOR THE SAFETY OF
PLAINTIFF AS TO SPA WORLD**

123. Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 10 through 24 as if set forth herein.

124. Defendant Spa World owed a duty to exercise reasonable care under the circumstances for the safety of its patrons.

125. This duty includes, but is not limited to, the duty to provide its patrons reasonable care by adequately inspecting, cleaning, maintaining, repairing, and/or remedying the subject area and the vicinity, and/or making other efforts to make sure the subject area and the vicinity were safe for the use and enjoyment of its patrons.

126. At all times material, Defendant Spa World, through its agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with Defendant Spa World, breached the duty of reasonable care owed to Plaintiff and were negligent by failing to adequately inspect, clean, maintain, repair, and/or remedy the subject area and the vicinity, and/or to make other efforts to make sure the subject area and the vicinity were safe, such that the risk creating and/or dangerous conditions discussed in the "Definitions and Factual Allegations" section of the instant complaint were present at the time of Plaintiff's incident.

127. These risk creating and/or dangerous conditions were caused by design defects and/or by Defendant Spa World's failure to adequately inspect, clean, maintain, repair, and/or remedy the subject area and the vicinity, and/or to make other efforts to make sure the subject area and the

vicinity were safe.

128. Defendant Spa World's failure to adequately clean, maintain, repair, and/or remedy the subject area and the vicinity, and/or to make other efforts to make sure the subject area and the vicinity were safe, was either due to its failure to adequately inspect the subject area and the vicinity prior to Plaintiff's incident to ensure they were in a reasonably safe condition, or due to its failure to adequately clean, maintain, repair, and/or remedy the subject area and the vicinity, and/or to make other efforts to make sure the subject area and the vicinity were safe, despite its knowledge of the dangerous conditions, which posed a risk to its passengers.

129. In addition, Defendant Spa World either knew or should have known of these risk-creating and/or dangerous conditions for the reasons discussed in the "Definitions and Factual Allegations" section of the instant complaint.

130. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear and tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

131. Defendant Spa World's negligence proximately caused Plaintiff great bodily harm in that, but for Defendant Spa World's negligence, Plaintiff's injuries would not have occurred.

132. As a result of Defendant Spa World's negligence, Plaintiff has suffered severe bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and loss of future earning capacity, loss of the value of Plaintiff's vacation, cruise, and transportation costs.

133. The losses are either permanent or continuing in nature.

134.  Plaintiff has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, GALINDA HUDSON, demands Judgment against Defendant, SPA WORLD, for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, and lost earning capacity, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

<div align="center">

**COUNT VIII**
**VICARIOUS LIABILITY AGAINST DEFENDANT CARNIVAL FOR THE**
**NEGLIGENCE OF THE SHIP'S MEDICAL STAFF**

</div>

135.  Plaintiff incorporates by reference and re-alleges as though originally alleged herein the allegations of paragraphs 11 through 14, and paragraph 16, and further alleges:

136. Defendant Carnival, through the ship's medical staff (including its physicians and nurses), and the ship's crew, owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

137. Such duties include, but are not limited to, providing such medical care and assistance as would an ordinarily prudent person under the circumstances.

138.  At all times material, the ship's medical staff (including its physicians and nurses), and the ship's crew, were full time employees and agents of Defendant Carnival, subject to its direction and control, who were engaged in the activity of discharging Defendant Carnival's obligation to make such medical aid and assistance available to its passengers as would an

ordinarily prudent person under the circumstances.

139.   Defendant Carnival is estopped to deny that the ship's medical staff (including its physicians and nurses), and the ship's crew, were its agents and/or employees and/or servants.

140.   Defendant Carnival directly paid the ship's medical personnel and regular crew a salary (i.e., payment by time) for their work in the ship's hospital and in treating passengers.

141.   Defendant Carnival created, owned, directly provided, and operated, the medical center to be used by the ship's medical personnel and passengers.

142.   Defendant Carnival pays to stock the medical center with all supplies, medical machinery, various medicines, and equipment to be used therein, regularly stocking and restocking same.

143.   Defendant Carnival collected all medical revenues directly from passengers and generated a profit on the sale of medical services, supplies, and equipment made by the ship's medical personnel to the passengers of the vessel.

144.   Defendant Carnival's marketing materials described the infirmary in proprietary language.

145.   The ship's medical personnel were members of the ship's crew; they were subject to the ship's discipline; they were required to wear the ship's uniforms; they (and, in particular, the ship's physicians) were members of the ship's officer's compliment, and at all times they were subject to termination, or other discipline, by Defendant Carnival.

146.   Defendant Carnival provided the ship's medical personnel certain forms of liability insurance and/or indemnification rights.

147.   Defendant Carnival, through the ship's medical staff (including its physicians and

nurses), and the ship's crew, breached its duties, and was negligent by failing to adequately examine, diagnose, and/or treat Plaintiff's injuries.

148. Furthermore, Defendant Carnival, through its employees and/or agents, breached its duties, and was negligent because the physicians and/or other crew members that were responsible for treating Plaintiff lacked adequate experience in treating the injuries Plaintiff suffered.

149. Defendant Carnival, through the ship's medical staff (including its physicians and nurses), and the ship's crew, also breached its duties and was negligent by failing to adequately supply and equip its medical center to be able to adequately examine, diagnose, and treat Plaintiff's injuries.

150. Moreover, Defendant Carnival, through the ship's medical staff (including its physicians and nurses), and the ship's crew, breached its duties, and was negligent by failing to take proper measures to ensure that Plaintiff was able to obtain the medical treatment Plaintiff needed in a reasonable amount of time, and as a result, Plaintiff suffered additional injuries and/or Plaintiff's injuries were aggravated and made worse.

151. Additionally, at all times material hereto, Defendant Carnival, through the ship's medical staff (including its physicians and nurses), and the ship's crew, was careless, negligent, and breached its duties as follows (for factual details, see the "Definitions and Factual Allegations" section of the instant complaint):

    a.   Failing to take proper imaging of Plaintiff's injuries;

    b.   Failing to promptly provide Plaintiff with proper medical care and attention;

    c.   Failing to timely and properly diagnose and/or assess Plaintiff's medical condition;

    d.   Failing to timely and properly attend to the Plaintiff, Plaintiff's injuries, and Plaintiff's pain;

    e.   Failing to provide reasonable medical care;

    f.   Failing to timely and properly treat and care for the Plaintiff;

    g.   Failing to timely and properly examine the Plaintiff's injuries;

    h.   Failing to take proper measures to secure proper treatment for Plaintiff, including unreasonably delaying taking measures to secure such proper treatment;

    i.   Failing to adequately medically evacuate and/or medically disembark Plaintiff to receive proper treatment for her injuries;

    j.   Failing to properly bring and/or arrange for Plaintiff to be brought to the ship's infirmary/medical center within a reasonable amount of time; and/or

    k.   Failing to give Plaintiff proper discharge instructions.

152.  Under the doctrine of Respondeat Superior, employers are vicariously liable for the negligent acts or omissions by their employees and/or other agents within the course of their employment and/or agency.

153.  Defendant Carnival is therefore vicariously liable for all injuries and damages sustained by Plaintiff as a result of the negligence of the ship's medical staff (including its physicians and nurses), and the ship's crew.

154.  At all times material hereto, the aforementioned acts or omissions on the part of the Defendant Carnival's ship's medical staff (including its physicians and nurses), and the ship's crew, fell below the standard of care.

155.  The negligence of Defendant Carnival's ship's medical staff (including its physicians

and nurses), and the ship's crew, proximately caused Plaintiff great bodily harm in that, but for Defendant Carnival's negligence, Plaintiff's injuries would not have occurred and/or said injuries would have been substantially lessened.

156.  Defendant Carnival, through its employees and agents, to wit, the ship's medical staff, knew or should have known that the medical procedures they employed violated and/or did not meet reasonable standards of medical care.

157.  As a result of Defendant Carnival's negligence, Plaintiff has suffered severe bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and loss of future earning capacity, loss of the value of Plaintiff's vacation, cruise, and transportation costs.

158.  The losses are either permanent or continuing in nature.

159.  Plaintiff has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, GALINDA HUDSON, demands Judgment against Defendant, CARNIVAL, for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, and lost earning capacity, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

<div align="center">

**COUNT IX**
**<u>APPARENT AGENCY AS TO CARNIVAL</u>**
**ARONFELD TRIAL LAWYERS**
**Aronfeld.com**
**Page 28 of 35**

</div>

## FOR THE ACTS OF THE SHIP'S MEDICAL STAFF

160.  Plaintiff incorporates by reference and re-alleges as though originally alleged herein the allegations of paragraphs 11 through 14, and paragraph 16, and further alleges:

161.  At all times material hereto, the ship's medical staff were represented to the Plaintiff and the ship's passengers as employees and/or agents and/or servants of Defendant Carnival, in that:

        a.  The medical staff wore a ship's uniform;

        b.  The medical staff ate with the ship's crew;

        c.  The medical staff was under the commands of the ship's officers;

        d.  The medical staff worked in the ship's medical department;

        e.  The medical staff was paid a salary by Defendant Carnival;

        f.  The medical staff worked aboard the vessel;

        g.  The medical staff spoke to the Plaintiff as though they had authority to do so by Defendant Carnival.

162. In addition, Defendant Carnival further represented to Plaintiff that the vessel's medical staff were agents and/or employees of Defendant Carnival through its marketing materials and through other official statements that described the infirmary in proprietary language, including language such as "CARNIVAL CORPORATION's/the CARNIVAL CORPORATION *Vista*'s/our infirmary/medical center," and through encouraging Plaintiff to make use of "its" infirmary/medical center if Plaintiff was in need of medical attention.

163. Furthermore, at no time did Defendant Carnival represent to the Plaintiff in particular, or the ship's passengers in general, in a meaningful way that the vessel's medical staff were not agents or employees of Defendant Carnival.

164.  At all material times, Plaintiff reasonably relied on the representations to Plaintiff's detriment that the medical staff were employees, and/or agents, and/or servants of Defendant Carnival.

165.  It was reasonable to believe that the medical staff were Defendant Carnival's agents because they wore a ship's uniform. In addition, at all times material, the medical staff spoke and acted as though they were authorized to do so by Defendant Carnival.

166.  This reasonable reliance was detrimental because it delayed Plaintiff from receiving proper medical treatment and/or Plaintiff would not have gone on the subject cruise with Defendant Carnival had Plaintiff known that the medical staff on the ship were not Defendant Carnival's agents.

167.  Defendant Carnival is estopped to deny that the medical staff were its apparent agents, and/or apparent employees, and/or apparent servants.

168.  Defendant Carnival had a duty to provide Plaintiff with reasonable care under the circumstances and through the acts of its apparent agents breached its duty to provide Plaintiff with reasonable care under the circumstances.

169.  Plaintiff's injuries were aggravated due to the fault and/or negligence of Defendant Carnival through the acts of its apparent agents as follows (for factual details, see the "Definitions and Factual Allegations" section of the instant complaint):

   a.   Failing to take proper imaging of Plaintiff's injuries;

   b.   Failing to promptly provide Plaintiff with proper medical care and attention;

   c.   Failing to timely and properly diagnose and/or assess Plaintiff's medical condition;

   d.   Failing to timely and properly attend to the Plaintiff, Plaintiff's injuries, and Plaintiff's pain;

e.   Failing to provide reasonable medical care;

f.   Failing to timely and properly treat and care for the Plaintiff;

g.   Failing to timely and properly examine the Plaintiff's injuries;

h.   Failing to take proper measures to secure proper treatment for Plaintiff, including unreasonably delaying taking measures to secure such proper treatment;

i.   Failing to adequately medically evacuate and/or medically disembark Plaintiff to receive proper treatment for her injuries;

j.   Failing to properly bring and/or arrange for Plaintiff to be brought to the ship's infirmary/medical center within a reasonable amount of time; and/or

k.   Failing to give Plaintiff proper discharge instructions.

170.  As a result of Defendant Carnival's negligence, Plaintiff has suffered severe bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and loss of future earning capacity, loss of the value of Plaintiff's vacation, cruise, and transportation costs.

171.  The losses are either permanent or continuing in nature.

172.  Plaintiff has suffered these losses in the past and will continue to suffer such loses in the future.

WHEREFORE, Plaintiff, GALINDA HUDSON, demands Judgment against Defendant, CARNIVAL, for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and

treatment, nursing care and treatment, lost wages, and lost earning capacity, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

<div align="center">

**COUNT X**
**<u>ASSUMPTION OF DUTY AS TO CARNIVAL FOR THE</u>**
**<u>NEGLIGENCE OF THE SHIP'S MEDICAL STAFF</u>**

</div>

173.  Plaintiff incorporates by reference and re-alleges as though originally alleged herein the allegations of paragraphs 11 through 14, and paragraph 16, and further alleges:

174.  Defendant Carnival owed Plaintiff the duty to exercise reasonable care under the circumstances for the safety of its passengers.

175.  Such duties include, but are not limited to, providing such medical care and assistance as would an ordinarily prudent person under the circumstances.

176.  Defendant Carnival elected to discharge this duty by having Plaintiff seen by its own ship's physicians and/or other crew members.

177.  As such, Defendant Carnival voluntarily assumed a duty for the benefit of Plaintiff to use reasonable care in the provision of medical services to the Plaintiff.

178.  Defendant Carnival breached its duties, and was negligent by failing to adequately examine, diagnose, and/or treat Plaintiff's injuries.

179.  Furthermore, Defendant Carnival breached its duties, and was negligent because the physicians and/or other crew members that were responsible for treating Plaintiff lacked adequate experience in treating injuries such as the one Plaintiff suffered.

180.  Defendant Carnival also breached its duties and was negligent by failing to

adequately supply its medical center to be able to adequately examine, diagnose, and treat Plaintiff's injuries.

181. Defendant Carnival breached its duties and was negligent by failing to take proper measures to ensure that Plaintiff was able to obtain the medical treatment Plaintiff needed in a reasonable amount of time, and as a result, Plaintiff suffered additional injuries and/or Plaintiff's injuries were aggravated and made worse.

182. Additionally, at all times material hereto, Defendant Carnival was careless, negligent, and breached its duties as follows (for factual details, see the "Definitions and Factual Allegations" section of the instant complaint):

    a.  Failing to take proper imaging of Plaintiff's injuries;

    b.  Failing to promptly provide Plaintiff with proper medical care and attention;

    c.  Failing to timely and properly diagnose and/or assess Plaintiff's medical condition;

    d.  Failing to timely and properly attend to the Plaintiff, Plaintiff's injuries, and Plaintiff's pain;

    e.  Failing to provide reasonable medical care;

    f.  Failing to timely and properly treat and care for the Plaintiff;

    g.  Failing to timely and properly examine the Plaintiff's injuries;

    h.  Failing to take proper measures to secure proper treatment for Plaintiff, including unreasonably delaying taking measures to secure such proper treatment;

    i.  Failing to adequately medically evacuate and/or medically disembark Plaintiff to receive proper treatment for her injuries;

    j.  Failing to properly bring and/or arrange for Plaintiff to be brought to the

ship's infirmary/medical center within a reasonable amount of time; and/or

    k.   Failing to give Plaintiff proper discharge instructions.

183.  At all times material hereto, the aforementioned acts or omissions on the part of Defendant Carnival fell below the standard of care.

184.  Defendant Carnival's negligence proximately caused Plaintiff great bodily harm in that, but for Defendant Carnival's negligence, Plaintiff's injuries would not have occurred, would have been substantially lessened, and/or would not have been aggravated.

185.  Defendant Carnival, through its employees and agents, to wit, the ship's medical staff, knew, or should have known, that the medical procedures they employed violated reasonable standards of medical care.

186.  As a result of Defendant Carnival's negligence, Plaintiff has suffered severe bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and loss of future earning capacity, loss of the value of Plaintiff's vacation, cruise, and transportation costs.

187.  The losses are either permanent or continuing in nature.

188.  Plaintiff has suffered these losses in the past and will continue to suffer such loses in the future.

      **WHEREFORE**, Plaintiff, GALINDA HUDSON, demands Judgment against Defendant, CARNIVAL, for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, and lost earning capacity, loss of the value of

Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, GALINDA HUDSON, demands trial by jury on all issues so triable.

**Dated:** September 3, 2021.

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Matthias M. Hayashi*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**Matthias M. Hayashi**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:      (305) 441.0440
F:      (305) 441.0198
***Attorneys for Plaintiff***

</div>